IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM EVANS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO.  05-6826 |
| | : | |
| JEFFREY A. BEARD in his official capacity | : | |
| as Secretary of the Pennsylvania Dept. of | : | |
| Corrections, ATTORNEY GENERAL OF | : | |
| PENNSYLVANIA, SUPERINTENDENT | : | |
| OF THE SCI AT WAYMART, and DISTRICT | : | |
| ATTORNEY OF THE COUNTY OF LEHIGH | : | |

OPINION

**NORMA L. SHAPIRO, J.**                                                    **May 28, 2009**

William Evans, an inmate at the State Correctional Institute at Waymart, Pennsylvania,

filed a petition for writ of habeas corpus under 28 U.S.C. § 2254.  The Honorable Charles B.

Smith, former United States Chief Magistrate Judge for Eastern District of Pennsylvania, filed a

Report and Recommendation ("R&R") recommending the petition be denied.  The R&R will be

adopted in part and the petition will be granted.

**I.      BACKGROUND**

On October 29, 1986, Evans was arrested in Memphis, Tennessee on warrants issued in

Lehigh County, Pennsylvania; he waived extradition.  On November 6, 1986, Evans was

transferred to Lehigh County Prison and charged with rape.  On November 13, 1986, Evans was

transferred to Northampton County, Pennsylvania and charged with separate counts of rape in

that jurisdiction.  Evans was convicted and sentenced in both counties, but in 1992, the

Pennsylvania Superior Court vacated both convictions and ordered new trials.

On remand, Evans stipulated to non-trial dispositions in both cases.  On January 14,

1994, Evans pleaded guilty in Northampton County and was sentenced to 10 to 20 years'

imprisonment.  On May 11, 1994, Evans entered a plea of *nolo contendere* in Lehigh County.

On June 29, 1994, Judge Lawrence Brenner of the Lehigh County Court of Common Pleas

sentenced Evans to 10 to 20 years' imprisonment, to be served concurrently with the sentence

imposed in Northampton County.[1]  On July 8, 1994, the Lehigh Court of Common Pleas issued a

"Court Commitment Form DC-300B"[2] (hereinafter, "Form DC-300B") recording the effective

---

[1]  Judge Brenner announced the sentence from the bench:

Now, June 29, 1994, the sentence is that you William H. Evans, Jr., pay the costs
of prosecution.  Make such restitution as determined appropriate by the probation
office if not already done so and if not agreed to as determined by the court.  That
you undergo imprisonment for a period of not less than 10 years nor more than 20
years in such state correctional institution as shall be designated by the deputy
commissioner for treatment bureau of corrections.  And credit be given you as
required by law for all time spent in custody as a result of these criminal charges
for which sentence is being imposed.  Stand committed until this sentence is
complied with.  Sentence shall run concurrent with any sentence imposed in
Northampton County.

Commonwealth v. Evans, No. 1987/125, Notes of Testimony at 19 (Pa. Ct. Common Pleas, June
29, 1994).

[2]  Under Pennsylvania law, the Court of Common Pleas must generate Form DC-300B
and provide a copy to the county correctional facility receiving the inmate within ten days of the
imposition of sentence. 42 Pa.C.S. § 9764(b).

date of the Lehigh County sentence as November 6, 1986.  (Paper No. 12, Ex. C.)  Judge Brenner

did not sign Form DC-300B.[3]

By designating the effective date of sentence as November 6, 1986 on Form DC-300B,

the Clerk of Court granted Evans credit on the Lehigh County sentence for all time served in

custody from that date forward.  At some point after Form DC-300B was issued on July 8, 1994,

the Pennsylvania Department of Corrections determined that Evans was erroneously granted time

credit because, under the Department's interpretation of state law, he was not entitled to credit on

the Lehigh County sentence for time served on the Northampton County sentence from

November 13, 1986 to March 21, 1991.

On December 28, 1994, Penny R. Grissinger, a records supervisor at the Department of

Corrections wrote to Judge Brenner:

> Your Honor:
>
> Your assistance is required in resolving a question concerning the pre-commitment credit indicated on the sentence imposed on the above-named inmate.
>
> Documents received by the Department of Corrections indicated that on June 29, 1994, under the seal of the court, a pre-commitment credit was ordered extending from November 6, 1986 to be applied to the following sentence: CP#125, '87.  However, other documents in our possession indicate that this inmate has been continuously serving a sentence previously imposed by Northampton County, CP#1694, '86, and that all of the time served by this inmate since November 13, 1986, has been credited towards the satisfaction of that sentence.

---

[3]  While Form DC-300B must be issued by the Court of Common Pleas, Pennsylvania courts have given legal effect to a Form DC-300B issued by the clerk of court without the signature of the sentencing judge.  See Boyd v. Pa. Dep't of Corr., 831 A.2d 779, 783 n.6 (Pa. Commw. Ct. 2003), aff'd, 886 A.2d 222 (Pa. 2005) ("Even though the Court Commitment order, Form DC-300B, was completed on the court's behalf by the clerk and was not signed by the sentencing judge, the Department did not err in relying on that form which indicated that Boyd had been ordered to pay" fines, costs and restitution.).

The legal office of the Department of Corrections has advised me that under prevailing statutory and case law, it does not appear to be appropriate to give pre-commitment credit on a subsequent sentence for time that was served in satisfaction of a previously imposed sentence. Pennsylvania Rule of Criminal Procedure 1406(c) provides that if the defendant is in prison under a sentence imposed for any other offense when a new sentence is imposed, the new sentence "shall be deemed to commence from the date of imposition," unless the sentence is expressly designated to be a consecutive sentence. The language appearing in Pennsylvania Rule of Criminal Procedure 1406(c) is adopted verbatim from a now repealed Pennsylvania statute which had been codified at 19 P.S. 894.

The reinactment [*sic*] of exactly the same language in a rule of criminal procedure that was found in a prior statute indicates that it was intended that the rule of procedure should be interpreted in the same way as the prior statute had been interpreted by the courts. [Citation omitted.] The appropriate interpretation of the language in 19 P.S. 894 was discussed at length by the Pennsylvania Superior Court in the case of Commonwealth ex rel. Lerner v. Smith, 151 Pa. Super. 265, 30 A.2d 347 (1943). The relevant portion of that opinion reads as

[Quotation omitted.]

Eligibility for pre-commitment credit is controlled by statute. 42 Pa. C.S. 9760. That statute allows credit for all time spent in custody "as a result of the criminal charge for which a prison sentence is imposed" (emphasis added). However, a long line of Pennsylvania cases have consistently adhered to the principle that a sentenced prisoner who has already once received a credit for time served is not entitled to receive a double credit for this same time on a separate and distinct sentence. [Citations omitted.]

Therefore, the Department has, to date, not extended any duplicative portion of this credit to this inmate. If your honor agrees that the credit is not appropriate, then amended commitment papers from the Clerk of Court removing the reference to this credit would be sincerely appreciated. However, if Your Honor disagrees with the analysis of the law set forth in this letter and wishes the Department to apply the full amount of credit originally indicated for this sentence, the Department will apply that credit upon receiving your reply to this letter confirming your intention.

Very truly yours,

Penny R. Grissinger
Corr. Records Supervisor

cc:    District Attorney
       Defense Attorney

Letter from Penny R. Grissinger to Honorable Lawrence J. Brenner (Paper No. 24, Ex. B)

(emphasis in original). The letter indicates a carbon copy was sent to "Defense Attorney," but

Evans disclaims receipt.[4]  (Paper No. 24.)   Nothing in the record suggests Judge Brenner

responded to Ms. Grissinger or the Department of Corrections.  On February 9, 1995, Andrea

Naugle, Lehigh County Clerk of Court, certified, signed and notarized Form DC-300B, which

had been issued without certification on July 8, 1994.[5]  (Paper No. 12, Ex. C.)

For eleven years following the imposition of Evans' sentence in 1994, the Department of

Corrections and the Board of Probation and Parole represented to Evans he would be released on

November 13, 2006.  As recently as October 13, 2004, the Pennsylvania Board of Probation and

Parole notified Evans, "You will serve your unexpired maximum sentence, 11/13/2006."  (Paper

No. 12, Ex. E.)  However, on April 13, 2005, without notice or a hearing, the Department of

Corrections issued a Sentence Status Summary deducting credit from the Lehigh County

sentence for time served on the Northampton County sentence from November 13, 1986 to

March 20, 1991.  The Sentence Status Summary explained that "credit for that time period is not

available toward the Lehigh County sentence.  With this DC16E report, the apparently

inadvertent duplicate credit is now removed from the computation @Lehigh CP125, in

accordance with current directives under Policy 11.5.1."  (Paper No. 22, Ex. A.)  The Sentence

--------

[4]  Evans claims he first learned of Ms. Grissinger's letter in January 2007, when Patricia
Mulqueen of the Lehigh County District Attorney's office sent a copy to Magistrate Judge
Smith's law clerk.  (Paper No. 28, Ex. B) (letter from Patricia Mulqueen to Magistrate Judge
Smith's law clerk attaching Ms. Grissinger's letter).
[5]  The parties submitted two versions of Evans' Form DC-300B.  Evans' version was
notarized, bears the seal of the Lehigh County Clerk of Court and was signed by Ms. Naugle on
February 9, 1995.  (Paper No. 12, Ex. C.)  The Commonwealth's version was not notarized, does
not bear the Lehigh County Clerk of Court's seal, and was not signed by Ms. Naugle.  (Paper No.
22, Ex. A.)   Nothing in the record explains why Evans submitted what appears to be the final
official Form DC-300B, but the Commonwealth submitted what appears to be an uncertified,
unsigned copy.  The court is troubled by the Commonwealth's submission because it omits Ms.
Naugle's subsequent certification, a fact of particular relevance to the matter in dispute.

Status Summary provided a revised "Controlling Maximum Date" of March 14, 2011.  Id.  Upon

learning of his amended release date, Evans filed a *pro se* petition for time credit with the Lehigh

County Court of Common Pleas.

On May 18, 2005, the Clerk of Court wrote to Judge Brenner regarding Evans' petition

for time credit:

> Attached please find a copy of a calculation of credit time that I prepared indicating the appropriate dates of incarceration, sentence and credit time for the above-named defendant as presently given by the State Correctional System.  Please note that I have added the time period 10/29/1986 to 11/06/1986 since I received information from the Lehigh County Detectives that the defendant was arrested in Memphis Tennessee on our warrant and extradited and returned to Lehigh County on November 6, 1986.

> I spoke with a Supervisor at the Records Department at the State Correctional Institution at Waymart to find out what credit was applied to the defendant's cases.  As you can see, credit was given to the defendant from the original arrest on 11/06/1986 to 11/12/1986.  Northampton County arrested the defendant on 11/13/1986 and credit from 11/13/1986 to 12/06/1990 (date of Northampton County's original sentence date) was applied <u>only</u> to the Northampton County case. The Lehigh County case's original sentence date was 03/21/1991.  After an appeal by the defendant, the Superior Court vacated the 03/21/1991 sentence and a new sentence was imposed on 06/29/1994.  **The State Correctional Institution gave credit to the defendant** for the time of the vacated Lehigh County sentence until the new sentence **(03/21/1991 to 06/29/1994)**.  The time in question by the defendant is from 11/13/1986 to 12/06/1990.  There are several case laws that indicate that "presentence custody in county after sentence in another county constituted time served under that other county's sentence, not additional presentence custody time credible [*sic*] to latter county's sentence. [Citations and quotations omitted.] The State Correctional Institution Records' Supervisor did indicate, however, that a letter was previously sent to your Honor about this matter.  This letter indicated that **the sentencing judge can allow credit to be given to the defendant for the presentence time (11/13/1986 to 12/06/1990).  This time already was credited towards the Northampton County case.**  The time period represents the date of arrest on the Northampton County charges (11/13/1986) to the date of the original sentence in Northampton County (12/06/1990).

> If you have any questions concerning this matter, please contact me.

Memorandum from Andrea E. Naugle, Clerk of Court, to Honorable Lawrence J. Brenner (Paper

No. 22, Ex. A.) (emphasis in original).  An attachment to Ms. Naugle's memorandum contained

a table reflecting a maximum release date of March 7, 2011.  Nothing in the record indicates that Evans was provided a copy of Ms. Naugle's memorandum or the attachment.

On May 19, 2005, one day after receiving Ms. Naugle's memorandum, Judge Brenner denied Evans' petition for time credit without a hearing or written opinion.  (Paper No. 22, Ex. F.)  On May 25, 2005, the Lehigh County Clerk of Court issued an amended Form DC-300B and changed the effective date of sentence from November 6, 1986 to June 29, 1994.  (Paper No. 12, Ex. D.)  On June 1, 2005, the Board of Probation and Parole issued a Notice of Board Decision informing Evans of same.  (Paper No. 12, Ex. F.)  On November 17, 2005, the Lehigh County Clerk of Court responded to correspondence from Evans regarding the amendment of Form DC-300B:  "For your information your **sentence was not amended**, only a correction of the court commitment order was amended."  Letter from Joseph J. Biro, Chief Deputy, Lehigh County Clerk of Courts to William Evans (Paper No. 12, Ex. H.) (emphasis in original).

On June 24, 2005, Evans filed a *pro se* motion to withdraw his plea of *nolo contendere*, which the Lehigh Court of Common Pleas treated as a petition under the Pennsylvania Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541 *et seq*. ("PCRA").  On August 23, 2005, Judge Brenner held a hearing on Evans' PCRA petition and dismissed it as untimely:

> In the instant case, Defendant was sentenced on June 20, 1994.  Defendant did not appeal his sentence.  Consequently, Defendant's judgment became final on July 20, 1995.  Thus, Defendant's judgment became final before the effective date of 42 Pa. C.S.A. § 9545.  Defendant, however, failed to file his motion for post conviction collateral relief within one (1) year of the effective date of the Post Conviction Relief Act.[6]  Moreover, Defendant failed to prove an exception under 42 Pa. C.S.A. § 9545(b)(1) to the one (1)

_____

[6]  The PCRA was signed by the Governor on November 17, 1995 and became effective 60 days later.  See 1995 Bill Tracking PA S.B. 81A.

year requirement.  Therefore, Defendant's motion for post conviction collateral relief was untimely.

Commonwealth v. Evans, No. 125/1987, slip op. at 4 (Pa. Ct. Common Pleas Dec. 15, 2005).

Evans filed a *pro se* motion to appeal the dismissal *nunc pro tunc*, which the court denied.  Id. The Pennsylvania Superior Court, finding Evans had failed to file a timely PCRA petition by July 20, 1995, one year after his sentence became final, affirmed the trial court's dismissal.

Commonwealth v. Evans, No. 3440 EDA 2005, slip op. at 4 (Pa. Super. Ct. July 14, 2006).

Evans filed a *pro se* petition for a writ of habeas corpus on November 30, 2005 with the United States District Court for the Middle District of Pennsylvania. The habeas petition alleged four grounds for relief: (1) the court amended Evans' sentence without a hearing in violation of his Fourteenth Amendment right to due process of law; (2) the amended sentence imposed an additional punishment for the same offense in violation of the Double Jeopardy Clause; (3) subsequent amendment of the sentence rendered Evans' plea of *nolo contendere* involuntary in violation of the Fifth Amendment; and (4) ineffective assistance of counsel in violation of the Sixth Amendment.  The action was transferred to the Eastern District of Pennsylvania and placed in administrative suspense pending Evans' PCRA petition appeal to the Pennsylvania Superior Court.  On July 14, 2006, the appeal was denied; on August 14, 2006, the case was removed from administrative suspense.

On May 30, 2007, Magistrate Judge Smith filed an R&R finding that: (1) the habeas petition was timely filed;[7] (2) claims 1, 2, and 3 were ripe and amenable to habeas review,[8] but

_____

[7]  Magistrate Judge Smith concluded that Evans' habeas petition timely under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1) (providing a one-year statute of limitations).  The Commonwealth had argued that Evans'

that claim 4 was unexhausted and procedurally defaulted;[9] (3) Evans was not entitled to due

_____

petition was untimely because it was not filed within one year of the date his conviction became final in 1994. Magistrate Judge Smith found AEDPA's statute of limitations tolled under 28 U.S.C. § 2244(d)(1)(D), providing that the limitations period shall run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Magistrate Judge Smith explained, "It was only in May 2005 that an amended Court Commitment sheet was filed, revealing that petitioner's sentence did not actually begin until June 29, 1994 and that petitioner was not receiving time credit for the time spent in custody in Northampton County from November 13, 1986 to March 20, 1991. . . .. Giving petitioner one year from the date of the amended Court Commitment sheet, he had until May 25, 2006 to seek habeas relief. As his petition was filed within this time period, we now deem it timely." R&R at 5-6.

   [8] A petitioner must exhaust all available remedies in state court before seeking habeas relief. Coleman v. Thompson, 501 U.S. 722, 731 (1991). See 28 U.S.C. §§ 2254 (b) & (c). Magistrate Judge Smith found that Evans had exhausted state law remedies for claims 1, 2, and 3 in his unsuccessful PCRA petition in state court. R&R at 8. Magistrate Judge Smith stated that, even though the state courts dismissed Evans' PCRA petition as untimely under state law, the claims were not procedurally defaulted. While a federal court is generally bound by a state court's interpretation of its own laws, Johnson v. Rosemeyer, 117 F.3d 104, 113 (3d Cir. 1997), a state court's misapplication of its own laws will not preclude federal habeas review. See, e.g., Halloway v. Horn, 355 F.3d 707, 713-14 (3d Cir. 2004); Greer v. Mitchell, 264 F.3d 663, 675 (6th Cir. 2001); Kubat v. Thieret, 867 F.2d 351, 366 n.11 (7th Cir. 1989). Magistrate Judge Smith explained that "a state court's blatant misapplication of its law will not have a preclusive effect on the federal court's jurisdiction to review a claim." R&R at 9 (citing Holloway v. Horn, 355 F.3d 707, 713-14 (3d Cir. 2004) (declining to defer to Pennsylvania Supreme Court's determination that claim was defaulted by waiver on PCRA review).
   Magistrate Judge Smith stated that the state courts dismissed Evans' PCRA petition as untimely, but that the state courts had misapplied 42 Pa. C.S.A. § 9545(1)(ii), which tolls the PCRA statute of limitations when "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." Magistrate Judge Smith stated, "The state's blanket refusal to apply the newly-discovered factual predicate exception of the PCRA statute was a misplaced reading of its own law to which this Court simply cannot be bound. Accordingly, we . . . decline to find the first three claims procedurally defaulted." R&R at 9. Magistrate Judge Smith's analysis of procedural default, to which no objection was filed, was correct.

   [9] Magistrate Judge Smith stated, "In this case, petitioner admits that he failed to present his fourth claim – alleging ineffective assistance of counsel – to the PCRA court and that he offered it only by inference to the Pennsylvania Superior Court. Undoubtedly, any attempts to bring this claim to the state courts would be deemed untimely. Accordingly, the Court has no choice but to find this claim to be procedurally defaulted." R&R at 7-8. Evans did not object to

process on the re-calculation of credit for time served;[10] (4) the re-calculation of credit for time served did not violate the Fifth Amendment's protections against double jeopardy;[11] and (5) the re-calculation of credit for time served in 2005 did not render Evans' 1994 plea of *nolo contendere* involuntary under the Fifth Amendment.[12]  Magistrate Judge Smith recommended that Evans' habeas petition be denied.  R&R at 18.

On June 13, 2007, Evans filed *pro se* objections on the due process and double jeopardy claims.  (Paper No. 28.)  Upon review of the R&R and Evans' objections, the court determined that Evans should be represented by counsel.  On November 25, 2008, the court appointed counsel.  (Paper No. 29.)  On March 27, 2009, Evans filed counseled objections seeking an order granting immediate release from custody.  "The amendment of the effective date of Petitioner's Lehigh County sentence 11 years after its imposition and the resulting revised time credit ruling

─────────────────

this finding.

[10]  Magistrate Judge Smith concluded that, because the Department of Correction's re-calculation of time credit did not alter Evans' sentence, Evans was not entitled to due process.  "Ultimately, these re-calculations never altered the length [of] petitioner's Lehigh County sentence of ten to twenty years.  Rather, they simply changed his release date from November 13, 2006 to March 7, 2011. . . . .. The simple correction of his start date and accompanying re-calculation of his maximum release date did not constitute a modification of his sentence or a re-sentencing for which he was entitled to due process protections."  R&R at 11.

[11]  Magistrate Judge Smith did not consider whether Evans was punished twice for the same offense in violation of the Fifth Amendment because he concluded that "[a]t no point in time was [Evans'] sentence changed, amended or modified.  The sole correction occurred in the calculated execution of his term of incarceration."  R&R at 13.

[12]  Magistrate Judge Smith stated that "petitioner is hard-pressed to argue that the misapplication of the effective date and time credit and the subsequent correction of his sentence calculation affected the voluntariness of his plea.  At no point during either the May 11[, 1994] colloquy or the June 29[, 1994] sentencing was there any representation made, by either the Court, the Commonwealth or the defense, regarding the expiration date of petitioner's sentence. . . .. [P]etitioner did not premise the voluntariness of his plea on knowing either the precise length of his sentence or exactly when his maximum sentence would expire."  R&R at 16-17.

that changed Petitioner's maximum release date[] from November 13, 2006 to March 13, 2011

violated Petitioner's 14th Amendment due process right not to be subject to unreasonable

prejudicial delay in the allocation of time credit and the determination of the maximum service

date of his sentence."  (Paper No. 33, p. 6.)

During a status hearing on March 30, 2009, the parties expressed a willingness to discuss

settlement, but Evans' counsel later notified the court that no settlement had been reached. (Paper

No. 37.)

## II.    DISCUSSION

Federal courts have jurisdiction over petitions for writs of habeas corpus challenging state

confinement in violation of the United States Constitution.  28 U.S.C. § 2241.  A district court

reviews *de novo* those portions of a magistrate judge's report and recommendation to which

objections are made.  See 28 U.S.C. § 636(b)(1)(C).  The state courts' refusal to consider Evans'

claims on the merits renders inapplicable the deferential standard of review set forth in 28 U.S.C.

§2254 (d).[13]  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000) (AEDPA's

deferential standard applies only to claims adjudicated on the merits in state court proceedings).

We review the merits *de novo*.

---

[13]  28 U.S.C. §2254 (d) provides, "An application for a writ of habeas corpus on behalf of
a person in custody pursuant to the judgment of a State court shall not be granted with respect to
any claim that was adjudicated on the merits in State court proceedings unless the adjudication of
the claim –  (1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme Court of the United
States; or (2) resulted in a decision that was based on an unreasonable determination of the facts
in light of the evidence presented in the State court proceeding."

A.      **Due Process**

The Due Process Clause of the Fourteenth Amendment provides, "nor shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV.  Judicial construction of the Due Process Clause has evolved substantially since its ratification after the Civil War, but the basic requirement has remained constant.  "The touchstone of due process is protection of the individual against arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539, 558 (1974) (prison must provide due process before revoking "good time" credit for inmate misconduct).  In Wolff, the Supreme Court recognized that certain due process protections, although limited by the exigencies of institutional confinement, extend to prisoners:

> Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a retraction justified by the considerations underlying our penal system.  But though his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime.  There is no iron curtain drawn between the Constitution and the prisons of this country.  Prisoners have been held to enjoy substantial religious freedom under the First and Fourteenth Amendments.  They retain right of access to the courts. Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race.  Prisoners may also claim the protections of the Due Process Clause.  They may not be deprived of life, liberty, or property without due process of law.

Wolff, 418 U.S. at 555-556 (citations and quotations omitted).

Evans claims he was denied due process of law guaranteed by the Fourteenth Amendment because his sentence was amended without a hearing eleven years after it was imposed.  Three aspects of due process are relevant here: (1) the unfairness of gross delay in correcting a sentencing error; (2) the right to be present at a sentencing proceeding; and (3) the right to fair processes and procedures concerning the deprivation of liberty.

12

### 1. Unfairness of Gross Delay

A guilty prisoner cannot escape punishment just because the sentencing judge imposed an illegal sentence, see United States v. Busic, 639 F.2d 940, 946 (3d Cir. 1981), but the Third Circuit Court of Appeals has recognized in dicta that the "power of a sentencing court to correct an invalid sentence must be subject to some temporal limit." Baker v. Barbo, 177 F.3d 149, 158 (3d Cir. 1999). To show a due process violation, a habeas petitioner must demonstrate that his re-sentencing was fundamentally unfair or "shocking to the universal sense of justice." Baker, 177 F.3d at 157.

In Baker, the New Jersey trial court imposed an illegal sentence of 11 years' imprisonment (*i.e.*, an aggregate custodial term of 27 years with 11 years of parole ineligibility) in violation of a state law amendment mandating a minimum 25 years' imprisonment. Two years later, while defendant's direct appeal was pending, the state filed a cross-appeal challenging the sentence; the New Jersey appellate court granted the state's cross-appeal and remanded for re-sentencing under the mandatory minimum. The defendant filed a petition for writ of habeas corpus claiming, as characterized by the court, that "it is a violation of the Due Process Clause to correct even an illegal sentence when enough time has passed such that the prisoner has some real interest in expecting a certain release date or in fact has been released and faces reincarceration." Baker, 177 F.3d at 158. The Third Circuit recognized the due process implications of correcting the error long after sentencing, but affirmed the district court's denial of habeas relief:

> Baker's reasonable expectations could not have reached that "temporal limit" wherever it may be. Baker's reliance on his sentence could not have lasted even two years as he was sentenced on December 4, 1987, and the State moved on August 21, 1989, for leave to cross-appeal from the sentence. Further, he could not have had a clear "expectation of

13

finality" when the State cross-appealed as the direct appeal process had not been concluded by that time.  See United States v. DiFrancesco, 449 U.S. 117, 136 (1980) (defendant "has no expectation of finality in his sentence until the appeal is concluded or the time to appeal has expired"); State v. Rodriguez, 97 N.J. 263, 478 A.2d 408, 412 (N.J. 1984) ("Since the underlying substantive convictions in this case were themselves the subject of attack on an appeal in which defendant sought their modification, no legitimate expectation of finality could be invested in the underlying convictions or the sentences related to them.").

Baker, 177 F.3d at 158.

Although the temporal limit is rarely reached, many decisions have recognized the due process implications of correcting an illegal sentence long after its imposition.  In Breest v. Helgemoe, 579 F.2d 95 (1st Cir. 1978), the First Circuit Court of Appeals explained:

> [W]e note our concern that the power of a sentencing court to correct even a statutorily invalid sentence must be subject to some temporal limit.  When a prisoner first commences to serve his sentence, especially if it involves a long prison term as here, the prospect of release on parole or otherwise may seem but a dimly perceived, largely unreal hope.  As the months and years pass, however, the date of that prospect must assume a real and psychologically critical importance. The prisoner may be aided in enduring his confinement and coping with the prison regime by the knowledge that with good behavior release on parole or release outright will be achieved on a date certain.  After a substantial period of time, therefore, it might be fundamentally unfair, and thus violative of due process for a court to alter even an illegal sentence in a way which frustrates a prisoner's expectations by postponing his parole eligibility or release date far beyond that originally set.  We need not decide, however, how long or under what circumstances the state or a sentencing court constitutionally can wait to enhance an invalid sentence.  The short period of time [of five days] involved here clearly was permissible.

Breest, 579 F.2d at 101.  See also Davis v. Sec'y of Corr., 266 Fed. Appx. 722, 724 (10th Cir. 2008) ("We note that our sister circuits have held that 'the power of' a sentencing court to correct even a statutorily invalid sentence must be subject to some temporal limit. …. While there may be some temporal limit on the power to correct an illegal sentence, eight days is not it."). See, e.g., United States v. Sanders, 452 F.3d 572, 580 (6th Cir. 2006) ("A delay in resentencing,

however, can still run afoul of due process guarantees. Just as the government cannot unduly prolong an investigation before bringing an indictment, due process also imposes an outer limit on the government's window of opportunity to resentence a defendant following an appeal.").

Magistrate Judge Smith concluded that Evans was not entitled to due process before the Clerk of Court amended Form DC-300B because the amendment altered the effective date of sentence, but not the sentence itself.  R&R at 11.   The Commonwealth contends, "A change to Petitioner's Form 300B has no judicial effect.  As part of the executive branch, the Department of Corrections lacks the power to adjudicate the legality of a sentence or to add or delete sentencing conditions.  It appears the Department of Corrections improperly calculated Petitioner's time credit on Form 300B and later corrected the calculation."  (Paper No. 22, p. 9.) (citation omitted).  However, the Commonwealth's argument incorrectly implies the Department of Corrections amended Evans' Form DC-300B when it did not.  By Pennsylvania statute, the Court of Common Pleas is responsible for generating a Form DC-300B, not the Department of Corrections:

> Within ten days from the date sentence is imposed, the ***court*** shall provide to the county correctional facility the following information pertaining to the inmate:
>
> * * *
>
> The Court Commitment Form DC-300B generated from the Common Pleas Criminal Court Case Management System of the unified judicial system.

42 Pa.C.S. § 9764(b)(5)(iv) (emphasis added).  See also 42 Pa.C.S. § 9764(a) ("Upon commitment of an inmate to the custody of the Department of Corrections, the sheriff or transporting official shall provide . . . *a copy of the court commitment form DC-300B generated*

*from the Common Pleas Criminal Court Case Management System of the unified judicial system*, the following information. . ..") (emphasis added).

The Pennsylvania Commonwealth Court has recognized that the Department of Corrections cannot revoke time credit on an inmate's court commitment papers without a court order.  In Oakman v. Dep't of Corr., 903 A.2d 106 (Pa. Commw. Ct. 2006), the Department of Corrections unilaterally re-calculated the inmate's time credit nine years after the sentence was imposed and did so without authorization of the trial court.  "[T]he Director of Classification, Movement & Registration of the Philadelphia Prison System decided that the sentencing judge incorrectly gave [the inmate] credit for time serve[d];" the director determined that the Department of Correction's re-calculation had "the same force and effect as if coming from a judge." Oakman, 903 A.2d at 108.  The court disagreed:

> We beg to differ.  Contrary to the Department's misguided belief, judges can change an order and only appellate courts - not administrative officials - may reverse an order of a trial court.  The Department, however, argues that if it is forced to rely on the trial court's orders, life will become an administrative nightmare.  "Attempting to obtain sentencing information from other sources in Philadelphia such as sentencing judges or clerical staff is extremely burdensome." (Department's brief at 12-13.)  Therefore, only the Director should be responsible for making decisions as to whether the sentencing order is correct.  The Department continues to explain that: "[c]hanging procedures now could be an overwhelming task to both Philadelphia County and Department of Corrections employees.  Such a change would require the Department's records staff to speak to numerous people (some of whom would be judges), assimilate all of the information, present it to all of the people involved, and get them all to agree on the correct sentence.  All the while, attempting to do this with information that the Department does not possess and with information that could be over twenty years old, like Mr. Oakman's.  Closing Pandora's box and putting all of the world's woes back in it would be more simple." (Department's brief at 13.)  Its claims of administrative woe are of its own making because all its concerns are alleviated by simply doing what it is required to do - carry out the terms of the order.

Oakman, 903 A.2d at 108-9 (ordering the Department of Corrections to credit inmate for time served, as ordered by the court commitment form).  Under state law, the Court of Common Pleas has the power to issue and amend Form DC-300B; the Department of Corrections does not.

The Department of Corrections' gross delay in seeking the state court's correction of Evans' Form DC-300B was fundamentally unfair, as was the court's decision to grant the amendment.  As early as 1994, the Department of Corrections had actual knowledge that Form DC-300B granted Evans more credit than it believed was allowed under state law.  After the Clerk of Court certified Form DC-300B granting the contested credit over the Department's objection in February 1995, the Department abandoned the issue for more than a decade.  In 2005, eleven years after the sentence was imposed and Evans had exhausted his appeal (and just one year before his scheduled release), the Department renewed its effort to remove the time credit.  The Department's prolonged delay in seeking correction of Form DC-300B is shocking to the conscience; so was the court's decision to grant the amendment.  If the Fourteenth Amendment Due Process Clause imposes a temporal limit on the power of a sentencing court to correct an illegal sentence, an eleven year delay by the Lehigh County Court of Common Pleas certainly exceeded that limit.

### 2.      Right to Be Present at a Sentencing Proceeding

The protection of due process includes the "right to be present at all stages of the trial where [the defendant's] absence might frustrate the fairness of the proceedings." United States v. Bertoli, 40 F.3d 1384, 1397 (3d Cir. 1994).  The right to be present at trial is also protected by the Sixth Amendment.  Illinois v. Allen, 397 U.S. 337, 338 (1970) ("one of the most basic rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at

every stage of his trial").  This right applies to a sentencing proceeding.  "The defendant's
presence at sentencing is a deeply rooted procedural protection and no mere formality."  United
States v. Faulks, 201 F.3d 208, 212 (3d Cir. 2000) (vacating sentence because defendant's
involuntary absence from the sentencing proceeding was not harmless error).  As Judge Becker
explained, "the responsibility confronting a district court judge when he or she sentences a
convicted defendant is an awesome one.  The presence of a defendant may well affect a judge in
the discharge of this most solemn of duties, a duty that still survives in an age of cabined
discretion in the wake of the Sentencing Guidelines. . . . .. It is not at all unlikely that a judge may
enter court of one mind about what sentence is appropriate in the abstract, only to modify the
pronouncement when faced with a live human being in open court."  Id. at 213.

       Due process requires that the state provide a hearing with the defendant present before
imposing additional punishment.  When the state challenges the validity of a sentence, the
accused has the right to a hearing if correction of the sentence would make the punishment more
onerous.  United States v. Ammar, 919 F.2d 13, 16-17 (3d Cir. 1990) (revised sentence was
imposed in an illegal manner, so petitioner should have the opportunity to have the sentence
vacated and reimposed in his presence).  Correcting a sentence which fails to conform to law is
not a mere ministerial act because, had the judge known of the legal defect at the time of
sentencing, it may well be that a shorter prison term would have been awarded.  Id. at 16.  See
also Caille v. United States, 487 F.2d 614 (5th Cir. 1973) (remanding for sentencing in presence
of petitioner).  Removal of credit for time served has the effect of increasing a sentence and must
be ordered in the presence of the defendant.  United States v. McCray, 468 F.2d 446, 451 (10th
Cir. 1972) (vacating order removing credit for time served).

Evans was entitled to a hearing before Judge Brenner denied the petition for time credit

and the Clerk of Court amended Form DC-300B.  The sentencing judge made a non-ministerial

determination regarding the duration of Evans' sentence and did so without Evans' presence in

violation of the Fourteenth Amendment Due Process Clause.

### 3.    Requirement of Fair Processes and Procedures

Due process requires the application of fair processes and procedures before a state

deprives an individual of liberty.  In Wolff v. McDonnell, supra, a class of inmates challenged

the prison's disciplinary rules, practices, and procedures providing for the revocation of "good

time" credit as punishment for prisoner misconduct.  Under state law, inmates could earn good

time credit that lessened the term of incarceration.  The Court held the inmates were entitled to

due process on the revocation of good time credit:

> It is true that the Constitution itself does not guarantee good-time credit for
> satisfactory behavior while in prison.  But here the State itself has not only
> provided a statutory right to good time but also specifies that it is to be forfeited
> only for serious misbehavior.  Nebraska may have the authority to create, or not, a
> right to a shortened prison sentence through the accumulation of credits for good
> behavior, and it is true that the Due Process Clause does not require a hearing in
> every conceivable case of government impairment of private interest.  But the
> State having created the right to good time and itself recognizing that its
> deprivation is a sanction authorized for major misconduct, the prisoner's interest
> has real substance and is sufficiently embraced within Fourteenth Amendment
> "liberty" to entitle him to those minimum procedures appropriate under the
> circumstances and required by the Due Process Clause to insure that the state-
> created right is not arbitrarily abrogated.

Wolff, 418 U.S. at 557 (citations and quotations omitted).  The Court held the prison's

disciplinary procedures failed the requirements of procedural due process because they did not

provide advance written notice of the claimed violation or a written statement of the factfinders

as to the evidence relied upon and the reasons for the disciplinary action taken.  Id. at 563.  "We

19

hold that written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense.  At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee." Id. at 564.  If, under Wolff, a prison must provide at least minimum procedures before revoking an inmate's good time credit for misconduct, then, *a fortiori*, a court must afford procedural protections before revoking statutory time credit of an inmate who has done nothing wrong.

The processes and procedures employed by the Department of Corrections and Court of Common Pleas fell short of the minimum procedural protections required by the Fourteenth Amendment.  Pennsylvania's own courts have expressed disapproval of the state's arbitrary and opaque procedures governing the re-calculation of time credit.  In Black v. Pa. Dep't of Corr., 889 A.2d 672 (Pa. Commw. Ct. 2005), for example, after the trial judge sentenced defendant for violating the terms of parole, the Clerk of Court issued a court commitment form granting 800 days of credit for time served on his original sentence.  Black, 889 A.2d at 673-74.  Almost three years later, the Department of Corrections determined the credit was granted in violation of state law.  Id. at 674 ("the Department contends that time served against an original charge can never be credited against a [violation of parole] sentence").  At the Department's request, the sentencing judge directed the Clerk of Court to issue a new commitment order revoking all but 73 days of credit.  Id.  The defendant filed a mandamus petition seeking an order directing that the Department of Corrections reinstate the balance of credit granted by the original court commitment form.  Id.  The court denied mandamus relief, but expressed disapproval of the process employed by the Department and trial court.  "While we are troubled that the

Department, without notice, can initiate a proceeding that leads to an order that extends incarceration for 727 days because it was done by order of the sentencing judge, mandamus is not available since the Department is now required to follow the Modified [Violation of Probation] Sentence until it is reversed."  Black, 889 A.2d at 677 (defendant must challenge the trial judge's revocation of time credit by filing a PCRA petition, not a mandamus petition seeking an order directing the Department to reinstate time credit).

Here, the Department of Corrections, without notice or a hearing, unilaterally revoked Evans' time credit eleven years after the sentence was imposed.  The Court of Common Pleas did not hold an evidentiary hearing or oral argument on Evans' petition for time credit, but instead initiated a *sua sponte*, outcome-determinative, *ex parte* factual inquiry into the Department of Corrections' re-calculation of time credit.  The evidence of record shows the Clerk of Court engaged in *ex parte* communications with the Department of Corrections and, without providing Evans notice, reported her findings to the sentencing judge.[14]  (See Paper No. 22, Ex. A) ("I spoke with a Supervisor at the Records Department at the State Correctional Institution at Waymart to find out what credit was applied to the defendant's cases.").  One day after receiving the Clerk of Court's memorandum regarding her *ex parte* factual inquiry, Judge Brenner denied Evans' petition for time credit without a hearing or written opinion.  (Paper No. 22, Ex. F.) When Evans filed a PCRA petition seeking collateral review, Judge Brenner dismissed it as untimely.  Commonwealth v. Evans, No. 125/1987, slip op. at 4 (Pa. Ct. Common Pleas Dec. 15,

---

[14]  The same Clerk of Court, Andrea Naugle, who signed and certified Form DC-300B granting Evans' credit over the Department's objection in 1995, amended the form in 2005 to revoke the time credit she had granted a decade earlier.  Ms. Naugle's amendment of Form DC-300B, perhaps approved by Judge Brenner, was inconsistent with due process.

2005).  The Department of Corrections and the Lehigh Court of Common Pleas, employing procedures and practices that fell short of the due process guaranteed by the Fourteenth Amendment, arbitrarily and capriciously amended Evans' maximum release date from November 13, 2006 to March 7, 2011 eleven years after the sentence was imposed.  Because the amendment of Form DC-300B violated the United States Constitution, Evans must be released.

      **B.**    **Double Jeopardy**

Evans objects to Judge Smith's finding on the double jeopardy claim and argues that the amendment to his sentence constitutes a second punishment for the same crime.  Because the court will grant habeas relief on grounds of due process, the double jeopardy claim is moot.

**III.**    **CONCLUSION**

The Report and Recommendation's findings on timeliness, exhaustion and procedural default are adopted.  Petitioner's objections to the Report and Recommendation's findings on due process are sustained.  The petition for writ of habeas corpus will be granted.  The Superintendent of the State Correctional Institute at Waymart, Pennsylvania will be directed to release petitioner from custody on the sentence imposed in Lehigh County Court of Common Pleas Case Number CP-125, '87 within thirty (30) days unless respondents appeal and obtain a stay from the Court of Appeals.  An appropriate order will follow.